E-FILED
Friday, 05 September, 2025  03:24:33 PM
Clerk, U.S. District Court, ILCD

**IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| JACQUELINE PIERRO, individually and on behalf of others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | Case No. 2:23-cv-02117 |
| v. | ) ) | Judge Colin Stirling Bruce |
| THE CARLE FOUNDATION HOSPITAL, | ) ) | Magistrate Judge Eric I. Long |
| Defendant. | ) | |

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF HER MOTION FOR FINAL
APPROVAL OF THE PARTIES' CLASS AND COLLECTIVE ACTION SETTLEMENT**

# TABLE OF CONTENTS

Page

I.    Summary ......................................................................................................1

II.   Background and Procedural History ........................................................2

III.  Summary of Settlement Terms ...............................................................2

      A.    Class Definition .............................................................................2

      B.    Settlement Fund; Allocation of the Fund; Payments to Class Members ................3

      C.    Uncashed Checks Will Be Distributed to the Unclaimed Property Division .........3

      D.    Release of Claims ..........................................................................4

      E.    Settlement Administrator ...............................................................4

      F.    Attorney Fees, Costs, and Service Awards ...................................5

      G.    The Notice and Claims Process ....................................................5

IV.   The Court Should Grant Final Approval ................................................8

      A.    The Parties' Notice Program Was Fair and Adequate ...............9

      B.    Rule 23(e)(2) Factors Favor Final Approval ...........................10

            1.    The Class Representative and Settlement Class Counsel Have Adequately Represented the Proposed Settlement Class – Rule 23(e)(2)(A) .............10

            2.    The Settlement is the Product of Arm's-Length, Non-Collusive Negotiations – Rule 23(e)(2)(B) ...............................12

            3.    The Relief Secured for the Settlement Class Warrants Final Approval – Rule 23(e)(2)(C) ..........................................12

            4.    The Settlement Treats Members of the Settlement Class Equally – Rule Rule 23(e)(2)(D) ........................................11

      C.    Seventh Circuit Case Law Supports Final Approval ...........................15

            1.    Strength of the Case for Plaintiff and the Settlement Class on the Merits, Balanced Against the Extent of the Settlement Offer, and the Complexity, Length, and Expense of Further Litigation ..........................15

2.    The Amount of Opposition to the Settlement and Reaction of Class Members to the Settlement ................................................................15

3.    Opinion of Competent Counsel ................................................16

4.    The Stage of Proceedings and the Amount of Discovery Completed .......17

VI.    Conclusion ................................................................................................17

# TABLE OF AUTHORITIES

Page

## CASES

*Am. Int'l Grp. V. ACE INA Holdings,*
  2012 WL 651727, at *13, 14 (N.D. Ill. Feb. 28, 2012) .....................................................15, 16

*Donovan v. Estate of Fitzsimmons,*
  778 F.2d 298, 309 (7th Cir. 1985)............................................................................................13

*Eisen v. Carlisle Jacquelin,*
  417 U.S. 156, 173-74 (1974)....................................................................................................10

*Gautreaux v. Pierce,*
  690 F.2d 616 (7th Cir. 1982)....................................................................................................17

*Gillespie v. Equifax Info. Servs., LLC,*
  Case No. 05-C-0138, 2009 U.S. Dist. LEXIS 131242, at *10 (N.D. Ill. Dec. 18, 2009) .........12

*In re Mexico Money Transfer Litig.,*
  164 F. Supp. 2d 1002 (N.D. Dec. 22, 2000)................................................................12, 16, 17

*In re NCAA Student-Athlete Concussion Injury Litig.,*
  332 F.R.D. 202, 217 (N.D. Ill. 2019) ........................................................................................9

*Isby v. Bayh,*
  75 F.3d 1191 (7th Cir. 1996) ...................................................................................................13

*McKinnie v. JP Morgan Chase Bank, N.A.,*
  678 F. Supp. 2d 806, 809 (E.D. Wis. 2009) .............................................................................15

*Phillips Petroleum Co. v. Shutts,*
  472 U.S. 797, 811-12 (1985)......................................................................................................9

*Reynolds v. Beneficial Nat'l Bank,*
  288 F.3d 277, 284 (7th Cir. 2002).............................................................................................13

*Seiden v. Nicholson,*
  72 F.R.D. 201, 208 (N.D. Ill. 1976) .........................................................................................13

*Snyder v. Ocwen Loan Servicing, LLC,*
  No. 14 c 8461, 2019 WL 2103379, at *4 (N.D. Ill. May 14, 2019)...........................................10

*Wong v. Accretive Health, Inc.,*
  773 F.3d 859, 863 (7th Cir. 2014).................................................................................9, 11, 13

**STATUTES**

29 U.S.C. 201 ................................................................................................................ passim

Fed. R. Civ. P. 23 (c)(2)(B) ......................................................................................... passim

Fed. R. Civ. P. 23 (e) ................................................................................................... passim

**MISCELLANEOUS**

4 *Newberg on Class Actions* § 13:53 ...............................................................................14

I.    **Summary**

On June 9, 2025, the Court granted preliminary approval of the Parties' $16,000,000 class and collective action settlement under the Fair Labor Standards Act, the Illinois Minimum Wage Law and the Illinois Wage Payment and Collection Act. (ECF No. 43). Under the Settlement, each of the approximate 13,328 Settlement Class Members who submitted Claim Forms will receive approximately $2.12 for each week they worked during the time period of May 25, 2013 to January 25, 2025. Thus, an individual who worked the equivalent of 50 full-time workweeks during the relevant recovery period, receive approximately $106.00. An individual who worked 200 full-time workweeks will receive approximately $424.00. Net settlement payments for the claimants range from a minimum $30.00 to approximately $1,292.32. The average individual net settlement payment for the 13,328 who submitted Claim Forms is approximately $511.14 each.

After the Court entered its Order granting preliminary approval, the Settlement Administrator issued the Notice of Settlement. The Notice informed Settlement Class Members of their rights under the Settlement: the right to participate in the settlement, the right to request to be excluded from the Settlement, and the right to object to the fairness of the Settlement. 13,328 Settlement Class Members have submitted Claim Forms. All Settlement Class Members who submitted a valid Claim Form will receive a settlement payment if the Court grants final approval of the Settlement. There are no objections to the Settlement and 69 individuals requested to exclude themselves from it (i.e., 00.23% of the Settlement Class Members).

Final approval of a class action settlement is appropriate where the court determines that a settlement is fair, adequate, and reasonable. *Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 652 (7th Cir. 2005). The average settlement payment is approximately $511.14. Additionally, Defendant ceased its rounding policy after the filing of the Complaint. Instead of

rounding punch times, Defendant now pays for all time worked. As set forth below, final approval is appropriate and Plaintiff respectfully requests that the Court enter the proposed Final Approval Order attached hereto as Exhibit 1.

## II.    Legal Background and Procedural History

Plaintiff set forth the background and procedural history of this case in her Memorandum in Support of her Motion for Preliminary Approval (ECF No. 42 at pp. 2, 3 of 29).  In sum, Plaintiff alleged that Defendant's practice of rounding  clock-in and -out times caused her and others to not be paid for all time worked.  Plaintiff alleged that if an employee scheduled to start work at 9:00 a.m. clocked in five minutes before the start of their scheduled shift time and started working, Defendant's practice rounded that five minutes away for payroll purposes and the employee would not be paid for the five minutes of work.  Defendant has denied all liability in this case, denied that its rounding practice was improper, and denied that it owes any wages to anyone based on the alleged claims.  Defendant further denied that class or collective certification is proper or suitable. The Parties engaged in a full-day in-person mediation with an experienced and recognized wage and hour mediator, Hunter R. Hughes. III, Esq., and reached a resolution of their claims.  This Court preliminarily approved the Parties' Settlement on June 9, 2025.  (ECF No. 43).

## III.    Summary of the Settlement Terms

The Settlement terms are summarized below.  A copy of the Settlement Agreement (the "Settlement Agreement") is attached hereto as Exhibit 21.

### A.    Class Definition (Ex. 2, Sett. Agree., § 1.29)

Plaintiffs seek final approval of the following class:

> All hourly-paid employees who worked for Defendant or The Carle
> Foundation in Illinois at any time between May 25, 2013 and January 25,
> 2025, and whose clock in and clock out times were rounded and who do not
> exclude themselves from the Settlement Class.

The Court previously conditionally certified the above-defined class.  (ECF No. 43, ¶ 3).

    **B.**     **Settlement Fund; Allocation of the Fund; Payments to Class Members**
        (Ex. 2, Sett. Agree., §§ 1.12, 3.1 (A), 3.4 (D))

While denying all liability and wrongdoing, Defendant has agreed to pay a "Gross Fund" of $16,000,000.00 from which payments for (i) Settlement Class Members, (ii) service awards, (iii) claims administration costs, and (iv) attorneys' fees and costs will be paid. (Ex. 1, §§ 1.12, 3.1 (A)).  The "Net Fund" consists of the remaining funds after subtracting payments for items (ii) – (iv) above.  (Ex. 1, § 1.16).  The Settlement Class Members were eligible to claim a *pro rata* share of the Net Fund based on the number of weeks they worked during the time period May 25, 2013 to January 25, 2025.  The Net Fund consisted of approximately $10,464,472.67 from which the approximate 29,539 total Settlement Class Members were eligible to claim their *pro rata* share.  A total of approximately 13,328 Settlement Class Members submitted valid Claim Forms.  The aggregate amount of the net settlement payments for these 13,328 individuals is approximately $6,812,530.04 (which will likely increase by September 19, 2025 as additional Claim Forms are processed).  Additionally, Defendant will pay the payroll taxes related to the settlement payments above and beyond the individual settlement payments it has agreed to pay.

Each of the 13,328 individuals who submitted Claim Forms will receive approximately $2.12 for each week they worked during the recovery period of May 25, 2013 to January 25, 2025. The net settlement payments range from $30.00 to $1,292.32.

    **C.**     **Uncashed Checks Will Be Distributed to the Unclaimed Property Division**
        (Ex. 2, Sett. Agree., §§ 2.14)

Settlement Class Participants will have 120 days to cash their settlement payments. The Settlement Administrator will cause funds from checks not cashed by the deadline to escheat to the Illinois Treasurer's office or the applicable state government agency as unclaimed property of

the particular Settlement Class Participants who did not cash their check within 120 days. This will enable Settlement Class Participants to request their settlement payments if they miss the check cashing deadline. *See* https://icash.illinoistreasurer.gov/#.

**D.    Release of Claims** (Ex. 2, Sett. Agree., §§ 4.1 - 4.4)

The release required of Settlement Class Members receiving payments is favorable to them. The release is limited to wage claims arising from the rounding claims.  Settlement Class Members who submitted a Claim Form release Defendant and all of its past and present parents, subsidiaries, divisions, predecessors, insurers, successors, holding companies, and their respective current and former employees, attorneys, officers, directors, board members, and shareholders, both individually and in their business capacities, from any and all rounding claims under the FLSA, IMWL, the IWPCA and applicable state and federal wage and hour laws, that accrue or accrued on any date through January 25, 2025, including claims, causes of action and liabilities against Releasees[1] that arise from or relate to the rounding claims as alleged in the Complaint.  (Ex. 1, § 4.1). Settlement Class Members who did not submit a Claim Form and did not exclude themselves will not receive a payment and will be bound by the release of IMWL and IWPCA claims but they will not release claims under the Fair Labor Standards Act.  (*Id*., § 4.2).  The release does not include any claims for unpaid sick time, vacation time, or paid time off.  (Ex. 1, § 4.1).

**E.    Settlement Administrator** (Ex. 2, Sett. Agree., § 1.29)

Analytics Consulting, LLC ("Settlement Administrator" or "Analytics") has administered the Notice and claims process and will administer the remainder of the Settlement including

---

[1] Under the Settlement Agreement, "Releasees" means The Carle Foundation and all their past and present parents, subsidiaries, divisions, predecessors, insurers, successors, holding companies, and their respective current and former employees, attorneys, officers, directors, board members, and shareholders, both individually and in their business capacities.  (Ex. 1, § 1.23).

issuing the settlement checks. Excluding the costs of mailing the additional Notices and the adjusted workweek letters, the Settlement Administrator's costs are estimated to be $126,299 (Ex. 3, Analytics Decl., ¶ 20; Ex. 1, §§ 1.16, 3.1(A)).

      **F.**    **Attorneys' Fees, Costs, and Service Award** (Ex. 2, Sett. Agree., §§ 3.2, 3.3(A))

Consistent with the Settlement Agreement and Notice of settlement, Plaintiff has filed a Motion for Attorneys' Fees (for one-third of the Settlement Fund, or approximately $5,333,333.33), Settlement Administrator's Costs, Litigation Costs (not to exceed $55,000.00) and Service Awards ($15,000.00 for the Named Plaintiff and $2,500.00 to each of the eight (8) Opt-In Plaintiffs). As set forth in the separate Motion, the requested fees, costs and service awards are reasonable and appropriate.

      **G.**    **The Notice and Claims Process**
               (Ex. 1, Sett. Agree., §§ 2.6 - 2.11)

After the Court granted preliminary approval of the Parties' settlement, Analytics (the Settlement Administrator) received the Court-approved Notice of Class and Collective Action Settlement ("Class Notice").  (*Id*., ¶ 4).  The Notice advised Settlement Class Members where and how to submit claims payment, their right to request exclusion from the Settlement, and their right to object to the Settlement, as well as the implications of each such actions.  (*Id*.).  The Notice advised Settlement Class Members of applicable deadlines and other events, including the Final Approval Hearing, and how they could obtain additional information.  (*Id*.).

On June 16, 2025, Counsel for Defendant provided Analytics with a mailing list ("Class List") containing names and last known mailing addresses for 28,353 Settlement Class Members, including 5 duplicates. (*Id*., ¶ 5).

The mailing addresses contained in the Class List were processed and updated utilizing the National Change of Address Database ("NCOA") maintained by the U.S. Postal Service. (*Id*., ¶

6).  The NCOA contains requested changes of address filed with the U.S. Postal Service. In the event that any individual had filed a U.S. Postal Service change of address request, the address listed with the NCOA would be utilized in connection with the mailing of the Class Notice.  (*Id*., ¶ 6).

On June 24, 2025, Analytics served CAFA Notice to the Attorneys General of States identified in the Class List as proper recipients, as well as the Attorney General of the United States, pursuant to 28 U.S.C. §1715. (*Id*., ¶ 7).  On June 30, 2025, Analytics mailed the approved Class Notice and Claim form to the most current mailing address of 28,348 Settlement Class Members via USPS First Class Mail.  A copy of the Class Notice and Claim form is attached respectively as Exhibits A and B to Exhibit 3 attached hereto. (*Id*., ¶ 8).  Of those 28,348 Settlement Class Members, nine (9) also received a General Release.  A copy of the General Release is attached as Exhibit C to Exhibit 3 attached hereto.  (*Id*., ¶ 9).

On August 19, 2025, Analytics mailed the approved Class Notice and Claim form to 1699 new Settlement Class Members. (*Id*., ¶ 10).  A copy of the Class Notice and Claim form is attached respectively as Exhibits D and E to Exhibit 3 attached hereto. (*Id*.).  As a result of additional investigation by the Defendant, on September 4, 2025, Analytics mailed three different Adjusted Workweek Letters to Settlement Class Members with adjusted estimated settlement amounts. (*Id*., ¶ 11).  1613 Settlement Class Members were sent an Adjusted Workweek Letter where their adjusted estimated settlement amount decreased by $100 or more. (*Id*.).  787 Settlement Class Members were sent an Adjusted Workweek Letter, along with a Claim form, where their adjusted estimated settlement amount increased by $100 or more, but had not submitted a valid Claim form. (*Id*.).  1319 Settlement Class Members were sent an Adjusted Workweek Letter where their adjusted estimated settlement amount had increased by $100 or more, but had submitted a valid

Claim form. (*Id.*).  The three Adjusted Workweek Letters are attached as respectively as Exhibits F, G, and H to Exhibit 3 attached hereto, along with the Claim Form (mailed where adjusted estimated payments had increased by $100 or more but a valid Claim Form had not been submitted) as Exhibit I to Exhibit 3 attached hereto**.**  (*Id.*).

If a Class Notice was returned by the USPS as undeliverable and without a forwarding address, Analytics performed an advanced address search on these addresses by using Experian, a reputable research tool. (*Id.*, ¶ 12).  Analytics used the name and previous address to locate a current address.  (*Id.*).  3,002 Class Notices were returned to Analytics as undeliverable by USPS. (*Id.*).  From the address research, Analytics obtained 2,025 updated addresses and Class Notices were mailed to the updated addresses.  (*Id.*).  In addition, Analytics promptly mailed the Class Notice to updated addresses provided by Class Counsel, USPS, and Settlement Class Members. (*Id.*).

On June 30, 2025, Analytics established a Settlement Website, www.CarleFLSASettlement.com, where Settlement Class Members could obtain copies of the Settlement Agreement, Class Notice, Claim Form, Amended Notice, the Court's Preliminary Approval Order, and Notice of Class and Collective Action Settlement. (*Id.*, ¶ 13).  The Settlement Website also permitted Settlement Class Members to submit claims electronically.  (*Id.*).

Analytics also established and maintains a toll-free telephone support line as a resource for Settlement Class Members seeking information about the Settlement. (*Id.*, ¶ 14).  The toll-free telephone line employs an interactive voice response system ("IVR system") to answer calls and provides callers the option of speaking with a live operator if they prefer. (*Id.*).  The toll-free number for the telephone support line is 1- 877-927-1035. (*Id.*).  This telephone number was

referenced in the Class Notice, Amended Class Notice, and the three Adjusted Workweek Letters, that were sent to Settlement Class Members and also appears on the Settlement Website.  (*Id*.).

Analytics also established a dedicated email address, CarleFLSASettlement@noticeadministrator.com, to receive and respond to Settlement Class Member inquiries.  (*Id*., ¶ 15).  The email address was also included in the Class Notice, Amended Class Notice, and the three Adjusted Workweek Letters. (*Id*.).

Settlement Class Members could opt out of the settlement by mailing or emailing a written statement requesting exclusion from the Class to Analytics, or by submitting an exclusion request through the Settlement Website, by August 29, 2025, and later extended to September 16, 2025 due to the addition of the 1699 new Settlement Class Members. (*Id*., ¶ 16).  As of September 5, 2025, Analytics has received 69 requests for exclusion.  (*Id*.).

Settlement Class Members could object to the proposed settlement by emailing, mailing, or faxing a written statement objecting to the settlement to Analytics by August 29, 2025, and later extended to September 16, 2025 due to the addition of 1699 new Settlement Class Members. (*Id*., ¶ 17).  As of September 5, 2025, Analytics has received zero objections.  (*Id*.).

As of September 5, 2025, Analytics has received 13,328 valid claims.  (*Id*.).  Settlement Class Members who received an Adjusted Workweek Letter with a Claim form where their estimated settlement payment increased by $100 or more, have a claim deadline of October 6, 2025.  (*Id*., ¶ 19).

## IV.    The Court Should Grant Final Approval

Federal Rule of Civil Procedure 23(e) governs court approval of class action settlements and mandates that "claims, issues, or defenses of a certified class…may be settled…only with the court's approval…after a hearing and only on finding that it is fair, reasonable, and adequate[.]"

Fed. R. Civ. P. 23(e). Rule 23(e)(2) sets out that a court must consider whether (1) the class representative and class counsel have adequately represented the class; (2) the settlement was negotiated at arm's length; (3) the settlement treats class members equitably relative to each other; and (4) the relief provided for the class is adequate. Fed. R. Civ. P. 23(e)(2) (eff. Dec. 1, 2018).

As the Advisory Committee for the 2018 Amendments to Rule 23 recognized that "each circuit has developed its own vocabulary for expressing these concerns[,]" the Court should also take into account the factors set out by the Seventh Circuit. Fed. R. Civ. P. 23(e), Advisory Committee's Note to 2018 Amendment. These factors are: "(1) the strength of the case for plaintiffs on the merits, balanced against the extent of settlement offer; (2) the complexity, length, and expense of further litigation; (3) the amount of opposition to the settlement; (4) the reaction of members of the class to the settlement; (5) the opinion of competent counsel; and (6) stage of the proceedings and the amount of discovery completed." *Wong v. Accretive Health, Inc.*, 773 F.3d 859, 863 (7th Cir. 2014)*.* Courts in the Seventh Circuit continue to analyze these factors in tandem with the Rule 23(e)(2) factors to ensure that a settlement is fair, reasonable, and adequate. *See, e.g.*, *In re NCAA Student-Athlete Concussion Injury Litig.*, 332 F.R.D. 202, 217 (N.D. Ill. 2019).

The following discussion of the factors set out in Rule 23(e)(2) and their corresponding factors set out by the Seventh Circuit demonstrates that the Settlement is fair, reasonable, adequate, and deserving of final approval.

### A.    The Parties' Notice Program was Fair and Adequate

In order to protect the rights of absent class members, a court must require the best notice practicable to class members. *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811-12 (1985). Rule 23(e)(1)(B) requires the Court to "direct notice in a reasonable manner to all class members". Fed. R. Civ. P. 23(e)(1)(B); *see also* Rule 21(c)(2)(B)("the court must direct to class members the best

notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort.").  It is well established that notice mailed to last-known addresses of class and collective members satisfies due process and constitutes "the best notice practicable." *See* Fed. R. Civ. P. 23(c)(2)(B); *Eisen v. Carlisle Jacquelin,* 417 U.S. 156, 173-74 (1974).

The Court previously approved the form and content of the notices of settlement.  (ECF No. 34, p4-5).  Pursuant to the Preliminary Approval Order, the Settlement Administrator issued the Notice of Class and Collective Action Settlement to approximately 29,539 individuals by U.S. Mail and a website, as approved by the Court and agreed to by the Parties.  The process used to issue notice was successful.  The Parties' and the Settlement Administrator's extensive efforts to effectuate notice to the class, as described above in Section III(G), meet the requirements of Rule 23(c)(2)(B) and Rule 21(e)(1)(B).

### B.     Rule 23(e)(2) Factors Favor Final Approval

#### 1.     The Class Representative and Settlement Class Counsel Have Adequately Represented the Class – Rule 23(e)(2)(A)

The first Rule 23(e)(2) factor, whether the class representative and class counsel have adequately represented the class, focuses on class counsel's and the class representative's performance as it relates to the "conduct of the litigation and of the negotiations leading up to the proposed settlement." Fed. R. Civ. P. 23(e), Advisory Committee's Note to 2018 Amendment. This factor is generally satisfied where the named plaintiff participated in the case diligently and class counsel fought vigorously in the litigation. *Snyder*, 2018 WL 4659274, at *4. In considering this factor, courts are to examine whether the plaintiff and class counsel had adequate information to negotiate a class-wide settlement, taking into account the nature and amount of discovery completed, whether formally or informally. *Id.*, 2018 WL 4659274 at *4. This inquiry is

coextensive with the Seventh Circuit's direction to consider the "stage of the proceedings and the amount of discovery completed." *Wong*, 773 F.3d at 863.

Here, Class Counsel and the named Plaintiff pursued this case vigorously on behalf of the potential class. The parties answered written discovery and completed two Rule 30(b)(6) depositions on the topics of Carle's rounding policies and practices between May 25, 2013 and 2024. Carle produced a large amount of documents as well as a massive amount of payroll records and data. More specifically, Defendant produced and Class Counsel analyzed daily punch times for approximately 30,000 hourly employees over approximately a 12 year period.

On February 20, 2024, the Court granted the Parties' Joint Motion to Stay Proceedings to allow them to concentrate their efforts on reaching a class-wide settlement. For a year the Parties engaged in a largely collaborative approach to analyze the payroll data for approximately 31,000 hourly workers and related issues so they would be in a position to engage in a productive mediation. Class Counsel retained an experienced statistician who helped them analyze millions of lines of daily punch in and out data. The Parties retained an experienced and nationally-recognized wage and hour mediator, Hunter R. Hughes, III, Esq., to assist them in resolving their claims. Mr. Hughes has mediated hundreds of wage and hour class and collective actions and has mediated thousands of complex civil and class actions. The Parties held a full-day in-person mediation session in California on February 3, 2025. The negotiations and mediation were conducted at arm's length. The mediator assisted the Parties in reaching an agreement on the substantive terms of the Settlement. The Parties then worked to finalize and memorialize the terms of the Settlement Agreement. Consistent with Rule 23(e)(2)(A), this adversarial action was resolved only after contested litigation and the Parties conducting significant research, data

11

analysis for thousands of individuals, discovery, and negotiation.  Accordingly, the named Plaintiff and Class Counsel have adequately represented the class.

> **2.    The Settlement is the Product of Arm's-Length, Non-Collusive Negotiations – Rule 23(e)(2)(B)**

The Settlement was the result of arm's-length negotiation between counsel, with the assistance of a neutral and recognized wage and hour mediator.  The Settlement was not collusive. In determining whether a settlement was reached absent any collusion between the Parties, courts look to whether the settlement negotiation was "intense, vigorous, and at arm's length." *In re Mexico Money Transfer Litig.,* 164 F. Supp. 2d at 1020. The significant litigation and negotiation activities in this matter demonstrate the adversarial nature of this litigation. The Parties were able to settle this matter only after they engaged in written discovery and document production, analyzed payroll data and clock-in and clock-out data for over 30,000 individuals, participated in a full-day mediation with a neutral experienced and recognized wage and hour mediator, and spent significant time negotiating, memorializing and finalizing the terms of the Settlement Agreement. Such arm's length negotiations with a neutral mediator and conducted by competent counsel constitute *prima facie* evidence of a fair settlement. *See e.g., Gillespie v. Equifax Info. Servs.*, *LLC*, Case No. 05-C-0138, 2009 U.S. Dist. LEXIS 131242, at *10 (N.D. Ill. Dec. 18, 2009).

> **3.    Relief Secured for the Settlement Class Warrants Final Approval – Rule 23(e)(2)(C)**

Rule 23(e)(2)(C) examines whether the relief provided for the class is adequate. Fed. R. Civ. P. 23(e)(2)(C). In making this determination, Rule 23 instructs courts to take into account several sub-factors, including (i) the cost, risks, and delay of trial and appeal; (ii) the effectiveness of the proposed method of distributing relief to the class; (iii) the terms of any proposed award of attorneys' fees, including timing of payment; and (iv) any agreement required to be identified

under Rule 23(e)(3). *Id.* This analysis necessarily encompasses two of the *Wong* factors. "[A]n integral part of the strength of a case on the merits is a consideration of the various risks and costs that accompany continuation of the litigation." *Donovan v. Estate of Fitzsimmons*, 778 F.2d 298, 309 (7th Cir. 1985).

Here, absent settlement, the litigation of this case would necessarily involve great costs and risks given the factual and legal issues asserted by the Parties and the additional discovery that inevitably would have been undertaken pre-certification which would include a large amount of written discovery, document production and depositions of fact witnesses and possibly experts. Absent settlement, the Parties would be required to incur the time and expense of the Named Plaintiff pursuing class and/or collective action certification of this action and, if granted, of administering notice to the members of the Class and/or Collective and permitting them an opportunity to opt-out of or opt-into this action. Thereafter, the Parties would be required to prepare for the burden and expense of additional written discovery, depositions of numerous witnesses (including a representative group of Opt-in Plaintiffs and Settlement Class Members), summary judgment motions, and possibly a trial to be conducted relating to the claims of potentially hundreds or thousands of Settlement Class Members and the defenses raised by Defendant with respect to the Class and to individual Settlement Class Members. Post-trial litigation, including appeals, would be a near certainty. Thus, additional litigation undoubtedly would increase the expenses of this litigation but will not reduce the risks for the Settlement Class Members. *See Isby v. Bayh*, 75 F.3d 1191, 1199 (7th Cir. 1996).

Additionally, continued litigation carries with it a decrease in the time value of money, for "[t]o most people, a dollar today is worth a great deal more than a dollar ten years from now." *Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277, 284 (7th Cir. 2002); *Seiden v. Nicholson*, 72

F.R.D. 201, 208 (N.D. Ill. 1976) ("If this case had been litigated to conclusion, all that is certain is that plaintiffs would have spent a large amount of time, money and effort."). Additionally, based on its defenses, Defendant could have defeated or greatly reduced any recovery in this lawsuit. Instead of further risks and delay, this Settlement offers immediate and substantial value relative to the strength of Plaintiffs' claims.

The "effectiveness of [the]…method of distributing relief to the class, including the method of processing class-member claims" weighs strongly in favor of the adequacy of this Settlement under Rule 23(e)(2)(C)(ii). An effective distribution method "get[s] as much of the available damages remedy to class members as possible and in as simple and expedient a manner as possible." William B. Rubenstein, 4 *Newberg on Class Actions* § 13:53. This Settlement involved retaining a settlement administrator who updated last known mailing addresses and then mailed the Notice and Claim Form directly to the Settlement Class Members. The Settlement Administrator also established a website. Class Members were given the option to file a Claim Form online in addition to faxing it or mailing it. This process is an effective and efficient method of distributing relief to the class and fully satisfies Rule 23(e)(2)(C)(ii).

The third sub-factor under Rule 23(e)(2)(C) considers "the terms of [the] proposed award of attorney's fees, including timing of payment[.]" Fed. R. Civ. P. 23(e)(2)(C)(iii). As Settlement Class Counsel explain in their separate motion and brief for fees and costs, their request for one-third of the Gross Fund is in-line with Seventh Circuit precedent and is equal to or below the fees awarded in other class settlements, including similar wage and hour class settlements.

The fourth and final factor under Rule 23(e)(2)(C), which requires the parties to identify any side agreements made in connection with the settlement, is not applicable here as the written

Settlement Agreement attached hereto as Exhibit 1 represents the entirety of the Settlement. There are no side agreements.

### 4. The Settlement Treats Settlement Class Members Equitably – Rule 23(e)(2)(D)

The Settlement treats Settlement Class Members equitably by distributing awards to Settlement Class Members based on the number of workweeks each person worked during the relevant time frame and making all class members eligible for a minimum payment of $30.00. (Ex. 1, Sett. Agree., § 3.4(D)(2)).

### C. Seventh Circuit Case Law Supports Final Approval

#### 1. Strength of the Case for Plaintiff and the Settlement Class on the Merits, Balanced Against the Extent of the Settlement Offer, and the Complexity, Length, and Expense of Further Litigation

The Settlement here is also strong because Defendant could have obtained a victory or greatly reduced the potential class recovery based on its defenses. Regardless of the outcome of the defenses, if the litigation had continued, it would have been complex, expensive, and protracted, as set forth above. This Settlement provides significant and guaranteed monetary relief to Settlement Class Members now, instead of expensive, complicated, and protracted litigation.

#### 2. The Amount of Opposition to the Settlement and Reaction of Class Members to the Settlement

Lack of significant opposition to a class action settlement "indicates that the class members consider the settlement to be in their best interest." *Am. Int'l Grp., Inc. v. Ace INA Holdings, Inc.*, 2012 WL 651727, at *6 (N.D. Ill. Feb. 28, 12). Here, the Settlement Administrator diligently implemented the Notice plan for approximately 30,000 individuals and no one objected to the Settlement. This is evidence of the Settlement Class's support for the Settlement. *See e.g. McKinnie v. JP Morgan Chase Bank, N.A.*, 678 F. Supp. 2d 806, 809 (E.D. Wis. 2009)(finding

15

that two objectors in a settlement with 1,200 claimants show a "lack of significant opposition to the settlement" which supported its approval); *see also Am. Int'l Grp. V. ACE INA Holdings,* Nos. 07-cv-2898, 09 C 2026, 2012 WL 651727, at *13, 14 (N.D. Ill. Feb. 28, 2012)("Out of a class of over thirteen hundred class members, only three…have objected, and just one has excluded itself from the class. Thus, using the number of class members as a metric, there has been almost no opposition to the settlement. This indicates that the class members consider the settlement to be in their best interest."); *In re AT&T Mobility Wireless Data Serv. Sales Tax Litig.*, 789 F. Supp. 2d at 964-65 (N.D. Ill. June 2, 2011) ("[I]t is illuminative that only a tiny fraction of the Class Members saw fit to opt out or to object.").

The percentage of Settlement Class Members who excluded themselves from the Settlement was less than one percent (1%). That there were only 69 (i.e., 00.23%) of the settlement class who requested to be excluded indicates support for the Settlement and strongly favors a finding that it is "fair and reasonable." *Am. Civil Liberties Union v. United States Gen. Servs. Admin.*, 235 F. Supp. 2d 816, 819 (N.D. Ill. 2002); *In re Mexico Money Transfer Litig.*, 164 F. Supp. 2d 1002, 1020-21 (N.D. Ill. 2000) (the fact that "99.9% of class members have neither opted-out nor filed objections to the proposed settlement…[is] strong circumstantial evidence favoring settlement.").

Class Counsel during the claims process directly communicated with more than 200 class members. The response to the amount of the individual settlement payments along with Defendant's abandoning its rounding policy was invariably positive.

### 3.    Opinion of Competent Counsel

Settlement Class Counsel are highly experienced class action attorneys and have been lead or co-lead counsel in numerous actions in federal and state courts. (Ex. 4, Ryan Decl. at ¶ 7; Ex.

16

5, Bormes Decl. at ¶¶ 6-8). In this case, Settlement Class Counsel became familiar with the particular issues of this case by communicating with the Named Plaintiff and eight (8) Opt-in Plaintiffs, engaging in written discovery, by reviewing documents, retaining an expert to analyze payroll data for thousands of individuals, by preparing for and engaging in a full day mediation with an experienced and recognized wage and hour mediator, and by negotiating a favorable resolution at the mediation. By their actions in this case and relevant experience, Settlement Class Counsel believe this is a fair and reasonable resolution of a *bona fide* dispute. (Ex. 4, ¶¶ 15, 17; Ex. 5, ¶¶ 14, 19). When experienced counsel supports the settlement, as they do here, their opinions are entitled to considerable weight. *See In re Mexico Money Transfer Litigation*, 164 F.Supp.2d at 1020; *Gautreaux v. Pierce*, 690 F.2d 616, 634 (7th Cir. 1982) (courts are "entitled to rely heavily on the opinion of competent counsel."); *see also Isby*, 75 F.3d at 1200.

### 4.    The Stage of Proceedings and the Amount of Discovery Completed

As set forth above, this case was resolved only after adversarial litigation, document review, the analysis of payroll data for thousands of individuals, and a full-day mediation. Thus, the litigation has advanced to a stage where Plaintiff's Counsel can fully and fairly evaluate the value of the Settlement.

## V.    Conclusion

For the foregoing reasons, Plaintiff respectfully requests that this Honorable Court grant final approval of the Parties' Settlement and for such other relief as the Court deems appropriate. A proposed Final Approval Order is attached hereto as Exhibit 1.


Dated:  September 5, 2025                    Respectfully submitted,

                                            /s/ Thomas M. Ryan
                                            One of Plaintiff's attorneys

James X. Bormes
Catherine P. Sons
Law Office of James X. Bormes, P.C.
8 South Michigan Avenue
Suite 2600
Chicago, Illinois 60603
(312) 201-0575
jxbormes@bormeslaw.com
cpsons@bormeslaw.com

Thomas M. Ryan
Law Office of Thomas M. Ryan, P.C.
35 East Wacker Drive
Suite 650
Chicago, Illinois 60601
(312) 726-3400
tom@tomryanlaw.com

## CERTIFICATE OF SERVICE

The undersigned, an attorney, hereby certifies that he caused a copy of the foregoing Plaintiff's Motion and Memorandum for Preliminary Approval of the Parties' Class and Collective Action Settlement to be filed and served on September 5, 2025 upon the following individuals via the Court's CM/ECF electronic filing system:

Amy Doehring
Catherine A. Miller
Akerman LLP
71 S. Wacker Drive, 47th Floor
Chicago, IL 60606
amy.doehring@akerman.com
catherine.miller@akerman.com

/s/ Thomas M. Ryan

18