E-FILED
Friday, 05 September, 2025  03:43:31 PM
Clerk, U.S. District Court, ILCD

# IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| JACQUELINE PIERRO, individually and on behalf of others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | Case No. 2:23-cv-02117 |
| v. | ) ) | Honorable Colin Stirling Bruce |
| THE CARLE FOUNDATION HOSPITAL, | ) ) | Magistrate Judge Eric I. Long |
| Defendant. | ) | |

## PLAINTIFFS' MOTION AND MEMORANDUM OF LAW FOR ATTORNEY FEES, LITIGATION COSTS, SETTLEMENT ADMINISTRATION COSTS AND SERVICE AWARD

## <u>TABLE OF CONTENTS</u>

**Page**

I.     Introduction ................................................................................................1

II.    Legal Background & Procedural History .........................................................1

III.   Argument .....................................................................................................2

       A.    An Award of Fees and Costs is Allowed Under the FLSA, IMWL & IWPCA ......2

       B.    The Requested Attorneys' Fees Are Reasonable, Fall Within the Market
             Rate for Similar Services, and Should Be Approved.................................3

             1.    Percentage-of-the-Fund Should Be Used to Determine Fees Here ............5

             2.    The Requested Fee Award is Appropriate ...................................7

             3.    Class Counsel Achieved an Excellent Result for the Class .......................9

             4.    The Risk of Non-Payment Supports the Requested Fee...........................10

       C.    The Payment of Class Counsel's Litigation Costs are Appropriate ....................10

       D.    The Court Should Approve the Settlement Administrator's Costs.......................11

       E.    The Court Should Approve the Requested Service Awards.................................11

IV.    Conclusion ..................................................................................................13

# **TABLE OF AUTHORITIES**

**Page**

## **CASES**

*Abbott v. Lockheed Martin Corp.,*
   2015 WL 4398475 (S.D. Ill. July 17, 2015)....................................................................11

*Americana Art China, Co., Inc. v. Foxfire Printing and Packaging, Inc.,*
   743 F.3d 243, 247 (7th Cir. 2014)............................................................................5

*Boeing Co. v. Van Gemert,*
   444 U.S. 472, 478 (1980) .......................................................................................3

*Briggs v. PNC Financial Services Group, Inc.,*
   No. 1:15-cv-10447, 2016 WL 7018566, at *4 (N.D. Ill. Nov. 29, 2016) ...................9

*Briggs v. PNC Financial Services Group, Inc.,*
   2016 WL 7018566, at *2 (N.D. Ill. May 1, 2017) ....................................................13

*Chambers v. Chase,*
   No. 11 cv 6014, Doc. No. 73 (N.D. Ill., Aug. 14, 2013)........................................6, 8

*Cook v. Niedert,*
   142 F.3d 1004, 1013 (7th Cir. 1998)....................................................................5, 12

*Dobbs v. DePuy Orthopaedics, Inc.,*
   885 F.3d 455, 459 (7th Cir. 2018)............................................................................8

*Evans v. Jeff D.,*
   475 U.S. 717, 733-34, 738 n. 30 (1986)…………………………………………… 3

*Gaskill v. Gordon,*
   160 F.3d 361, 362 (7th Cir. 1998)........................................................................7, 8

*Gehrich v. Chase Bank, N.A.,*
   316 F.R.D. 215, 235 (N.D. Ill. 2016) ......................................................................4

*Hale v. State Farm Mut. Auto. Ins. Co.,*
   No. 12-0660-DRH, 2018 WL 6606079, at *7 (S.D. Ill. 2018) ...................................6

*Heekin v. Anthem, Inc.,*
   No. 05-1908, 2012 WL 5878032, at *4 n.2 (S.D. Ind. Nov. 20, 2012)......................4

*In re Cap. One Tel. Consumer Prot. Act Litig.,*
   80 F. Sup. 3d 781, 796 (N.D. Ill. 2015) ...............................................................4, 5

*In re Synthroid Mktg. Litig.,*
   264 F.3d at 719 .................................................................................................3, 10

*Kirchoff v. Flynn,*
   786 F.2d 320, 324 (7th Cir. 1986) ...................................................................6

*Kolinek v. Walgreen Co.,*
   311 F.R.D. 483, 500-501 (N.D. Ill. 2015) .......................................................5

*Matter of Cont'l Ill. Sec. Litig.,*
   962 F.2d 566, 570 (7th Cir. 1992) ...................................................................10

*Meyenberg v. Exxon Mobil Corp.,*
   2006 U.S. Dist. LEXIS 52962 at *5 (S.D. Ill., July 31, 2006) .........................7

*McKinnie v. JP Morgan Chase Bank, N.A.,*
   678 F. Supp. 2d 806, 814-15 (E.D. Wis. 2009) ...............................................6

*Nimely v. Randstad General Partners (US), LLC,*
   NO. 12-cv-10431, Doc. NO. 85 (N.D. Ill. Mar. 25, 2014) .............................6, 8

*Prena v. BMO Fin. Corp.,*
   NO. 15 C 09175, 2015 WL 2344949, at *1 (N.D. Ill. May 15, 2015) ..............6

*Retsky Family Ltd. P'ship v. Price Waterhouse LLP,*
   No. 97 C 7694, 2001 WL 1568856, at *4 (N.D. Ill. Dec. 10, 2001) ................8

*Schulte v. Fifth Third,*
   805 F. Supp. 2d 560, 597 (N.D. Ill. 2011) .....................................................4

*Skelton v. General Motors,*
   860 F.2d 250, 252 (7th Cir. 1988) ...................................................................3

*Spegon v. Catholic Bishop of Chicago,*
   175 F.3d 544, 550 (7th Cir. 1999) ...................................................................3

*Sutton v. Bernard,*
   504 F.3d 688, 692 (7th Cir. 2007) ...........................................................4, 5, 10

*Taubenfeld v. AON,*
   415 F.3d 597, 599 (7th Cir. 2005) ...................................................................4

*Williams v. Gen. Elec. Cap. Auto Lease,*
   No. 94-7410, 1995 WL 765266, at *9 (N.D. Ill. Dec. 26, 1995) ...................5

*Williams v. MGM-Pathe Communications Co.*,
129 F.3d 1026, 1027 (9th Cir. 1997)……………………………………………………… 3

*Williams v. Illinois Title Loans, Inc.,*
  13 CH 24303 (Circuit Court of Cook County, Nov. 24, 2014)...................................6

*Williams v. Rohm & Haas Pension,*
  658 F.3d 629, 635-36 (7th Cir. 2011) .....................................................................4

*Williams-Green v. J. Alexander's Restaurants, Inc.,*
  No. 09-cv-5707, Doc. No. 138 (N.D. Ill., Dec. 21, 2012).........................................6

## STATUTES

29 U.S.C. § 216(b) ......................................................................................................2

820 ILCS § 105/12(a) .................................................................................................2

## MISCELLANEOUS

Brian T. Fitzpatrick, *An Empirical Study of Class Action Settlements and Their Fee Awards,*
  7 J. Empirical L. Stud. 811, 814, (2010) .................................................................7

Newberg on Class Actions § 15.83 (5th ed.) ..............................................................8

## I.    Introduction

On June 10, 2025, the Court granted preliminary approval of the Parties' $16,000,000 class and collective action settlement under the Fair Labor Standards Act and Illinois state law.  (ECF No. 43).  Class Counsel request the Court to approve the following payments from the $16,000,000 Settlement Fund: (i) attorney fees of one-third ($5,333,333.33); (ii) litigation costs not to exceed $55,000; (iii) Service Awards of $15,000 to the Named Plaintiff and $2,500 each to the eight (8) Opt-in Plaintiffs; and (v) settlement administration costs of $126,299.00 (estimated) payable to Analytics, LLC.

Under the settlement, a fund was created from which approximately 29,539 individuals were eligible to obtain a settlement payment.  Each of the 13,328 individuals who submitted Claim Forms will receive approximately $2.12 for each of the weeks they worked during the period of May 25, 2013 to January 25, 2025. The net settlement payments for the 13,328 participants range from a minimum $30.00 to approximately $1,292.32 and average approximately $511.14 per claimant. Defendant will pay the payroll taxes related to the settlement payments above and beyond the individuals net settlement payments.  In addition to the monetary payments to Class Members, Defendant has stopped the rounding practice was at issue in this lawsuit.  Since early 2025, Defendant pays its hourly workers for all recorded time worked and not rounded time.

There were no objections. Just approximately 00.23% (69 individuals) elected to opt out. As explained below, the excellent terms of the settlement warrant final approval of the payments Class Counsel requests.

## II.    Legal Background & Procedural History

On May 25, 2023, Plaintiff filed her Collective and Class Action Complaint ("Complaint") asserting claims against Defendant under the Fair Labor Standards Act (the "FLSA"), the Illinois

1

Minimum Wage Act (the "IMWL"), and the Illinois Minimum Wage Act (the "IWPCA") for the alleged failure to pay overtime and straight-time wages to the Plaintiff and a putative class and collective of hourly-paid employees. Eight other individuals have filed consent to join forms and opted into this case (the "Opt-In Plaintiffs"). Plaintiff alleged that Defendant had a policy and practice of rounding the employees' clock in and clock out times to the employees' detriment. Defendant denied that it is liable or owes any wages to anyone based on the alleged claims and further denied that class or collective certification is proper or suitable.

The Parties engaged in written and oral discovery and completed two Rule 30(b)(6) depositions of corporate representatives. The Parties explored the potential for a mediation and ultimately retained a nationally recognized wage and hour mediator, Hunter R. Hughes, III, to assist them in resolving their claims. The Parties held a full-day in-person mediation session on February 3, 2025. The negotiations and mediation were conducted at arm's length. Prior to the mediation, Defendant produced all the payroll and clock-in and -out data for approximately 30,898 individuals. Mr. Hughes assisted the Parties in reaching an agreement on the substantive terms of the Settlement. After the mediation, the Parties worked to finalize terms of the Settlement Agreement and Release (the "Settlement Agreement") attached as Exhibit 2 to Plaintiffs' Motion and Memorandum for Final Approval of the Parties' Class and Collective Action Settlement.

## III.    Argument

### A.    An Award of Fees and Costs is Allowed Under the FLSA and IMWL

The FLSA, IMWL and the IWPCA provide that reasonable attorneys' fees and costs shall be awarded to prevailing plaintiffs. 29 U.S.C. § 216(b) ("The court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action."); 820 ILCS § 105/12(a) ("If any employee is paid by

his employer less than the wage to which he is entitled under the provisions of this Act, the employee may recover in a civil action the amount of any such underpayments together with costs and such reasonable attorney's fees as may be allowed by the Court…."); *Spegon v. Catholic Bishop of Chicago*, 175 F.3d 544, 550 (7th Cir. 1999).

If this Court grants final approval of the settlement, Plaintiffs and the Settlement Class Members here will be prevailing parties, because they will have an award entered in their favor. When fee-shifting statutes such as the FLSA and the IMWL are involved, parties may negotiate settlements that encompass a defendant's total liability for damages, attorney fees, and costs. *See Evans v. Jeff D.*, 475 U.S. 717, 733-34, 738 n. 30 (1986); *see also Williams v. MGM-Pathe Communications Co*., 129 F.3d 1026, 1027 (9th Cir. 1997) ("parties to a class action properly may negotiate not only the settlement of the action itself, but also the payment of attorney's fees.").

**B.     The Requested Attorneys' Fees Are Reasonable, Fall Within the Market Rate for Similar Services, and Should Be Approved**

Rule 23 authorizes courts to "award reasonable attorney's fees…that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h).  In common fund settlements like this one, the attorneys' fee award is typically made as a share of the fund. The common fund doctrine is "based on the equitable notion that those who have benefited from litigation should share its costs." *Skelton v. General Motors*, 860 F.2d 250, 252 (7th Cir. 1988) (citation omitted).  By awarding fees payable from the common fund created for the benefit of the entire class, the court spreads litigation costs proportionately among those who will benefit from the fund. *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980).

The Seventh Circuit has directed district courts in common fund cases to award fees to class counsel based on the "market rate," which must be determined by "approximating the terms that would have been agreed to *ex ante*, had negotiations occurred." *In re Synthroid Mktg. Litig.*,

264 F.3d at 719; *Sutton v. Bernard*, 504 F.3d 688, 692 (7th Cir. 2007) ("[W]e have consistently directed district courts to do their best to award counsel the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time.").

In order to determine the applicable market and corresponding market rate for attorneys' fees, courts look at three factors: 1) actual fee contracts that were privately negotiated for similar litigation, 2) data from class-counsel auctions, and 3) information from other cases. *Williams v. Rohm & Haas Pension*, 658 F.3d 629, 635–36 (7th Cir. 2011) (quoting *Taubenfeld v. AON*, 415 F.3d 597, 599 (7th Cir. 2005)). In effect, "the object is to simulate the market where a direct market determination is infeasible." *Schulte v. Fifth Third*, 805 F. Supp. 2d 560, 597 (N.D. Ill. 2011).

Here, although courts generally afford the first factor comparatively less weight in class litigation, Class Counsel's retainer agreements with Plaintiff provides for fees of up to 35% of the total recovery. (Ex. 1, Ryan Decl. ¶ 21); *Gehrich v. Chase Bank, N.A.*, 316 F.R.D. 215, 235 (N.D. Ill. 2016) (factoring a similar arrangement into fee analysis, with appropriate caveats); *In re FedEx Ground Packaging System, Inc. Employment Practices Litig.*, 251 F.Supp3d 1225, 1236 (N.D. Ind. 2017)("Our court of appeals favors the percentage-of-the-fund fee in common fund cases because it provides the best hope of estimating what a willing seller and a willing buyer seeking the largest recovery in the shortest time would have agreed to *ex ante*."), *citing In re Synthoid Mktg. Litig.*, 325 F.3d 974, 979-80 (7th Cir. 2003). As to the second factor, Class Counsel are unaware of any class-counsel auctions in wage and hour cases. Much of that data comes from the securities-law context, and courts generally agree that data from those auctions has little bearing outside the securities context. *See, e.g.*, *Heekin v. Anthem, Inc.*, No. 05-1908, 2012 WL 5878032, at *4 n.2 (S.D. Ind. Nov. 20, 2012) (stating, in a case involving an insurer's demutualization, that "auctions in securities actions have little bearing on this case"); *see also In re Cap. One*, 80 F. Supp. 3d at

4

796 (acknowledging that "data from pre-suit negotiations and auctions tend to be sparse" and declining to rely on any such data). The third factor is evidence from similar cases, which courts generally agree provides the most compelling evidence of the market. *See Taubenfeld*, 415 F.3d at 600; *In re Cap. One*, 80 F. Supp. 3d at 796-97 ("The Seventh Circuit has relied on the same empirical data [analyzing fee awards in similar class actions where fees were awarded at the end of the case] to determine the 'norm' for fee awards, and this court will do so as well.").

Here, Plaintiffs move the Court to award fees in the amount of one-third of the Gross Settlement Fund. As explained below, the requested fee is fair and reasonable under the Seventh Circuit's market approach, is supported by other fee awards in similar wage and hour litigation, and fairly compensates Class Counsel for the risk they assumed in taking on this case and the results achieved.

### 1.    Percentage-of-the-Fund Should be Used to Determine Fees Here

Although district courts have discretion to choose either the "percentage-of-the-fund" or the "lodestar" method in awarding attorneys' fees in a common fund case, *Americana Art China, Co., Inc. v. Foxfire Printing and Packaging, Inc*., 743 F.3d 243, 247 (7th Cir. 2014), "[t]he approach favored in the Seventh Circuit is to compute attorney's fees as a percentage of the benefit conferred on the class," especially where the percentage accurately reflects the market. *Williams v. Gen. Elec. Cap. Auto Lease*, No. 94-7410, 1995 WL 765266, at *9 (N.D. Ill. Dec. 26, 1995); *Sutton*, 504 F.3d at 693 (directing district court on remand to consult the market for legal services to arrive at a reasonable percentage); *Kolinek v. Walgreen Co*., 311 F.R.D. 483, 500-501 (N.D. Ill. 2015) (citing *Cook v. Niedert*, 142 F.3d 1004, 1013 (7th Cir. 1998)) ("[O]ne common method of choosing between the percentage and lodestar approaches is to look to the calculation method most commonly used in the marketplace at the time such a negotiation would have occurred.").

5

To determine which fee calculation method is more appropriate, the Court should look to the prevailing method for compensating counsel in similar cases. *See McKinnie v. JP Morgan Chase Bank, N.A.*, 678 F. Supp. 2d 806, 814–15 (E.D. Wis. 2009). The normal practice in wage and hour class actions, like consumer class actions, is to negotiate a fee arrangement based on a percentage of the plaintiffs' ultimate recovery. *See e.g.*, *Quintanilla v. OSF Healthcare Syst.*, No. 1:24-cv-00294 (N.D. Ill. July 2, 2025, ECF No. 48)(approving 35% fee of $10,000,000 wage and hour settlement of rounding and meal break claims); *Smith v. Advocate*, No. 19-cv-5148 (N.D. Ill. Aug. 5, 2022)(awarding 35% fee of $9,250,000 settlement of rounding wage claims); *Porter v. WideOpenWest, Inc.*, No. 18-cv-01700 (N.D. Ill. Nov. 20, 2019, ECF No. 54)(awarding percentage of the fund as attorney fees in wage and hour collective action); *Prena v. BMO Fin. Corp.*, No. 15-cv-09175, 2015 WL 2344949, at *1 (N.D. Ill. May 15, 2015) (a contingency of 33-40% is typically charged in FLSA cases); *Williams-Green v. J. Alexander's Restaurants, Inc.*, No. 09-cv-5707, (N.D. Ill., Dec. 21, 2012, ECF No. 138), (Cole, J.)(awarding percentage of the fund in wage and hour class action); *Chambers v. Chase*, No. 11 cv 6014, (N.D. Ill., Aug. 14, 2013, ECF No. 73) (Keys, J.)(awarding percentage of fund in wage and hour class action); *Nimely v. Randstad General Partners (US), LLC*, No. 12-cv-10431, Doc. No. 85 (N.D.Ill. Mar. 25, 2014) (Bucklo, J.) (awarding percentage of fund in wage and hour class action); *Williams v. Illinois Title Loans, Inc*., 13 CH 24303 (Circuit Court of Cook County, Nov. 24, 2014) (Kennedy, J.) (awarding percentage of fund in wage and hour class action); see also *Kolinek*, 311 F.R.D. at 501; *Kirchoff v. Flynn*, 786 F.2d 320, 324 (7th Cir. 1986) ("When the prevailing method of compensating lawyers for similar services is the contingent fee, then the contingent fee *is* the market rate."). Because the percentage-of-the-fund approach best mirrors typical contingency agreements, it makes sense that "the vast majority of courts in the Seventh Circuit" use it. *Hale v. State Farm Mut. Auto. Ins. Co.*, No. 12-

0660-DRH, 2018 WL 6606079, at *7 (S.D. Ill. 2018) (quotation omitted); *see also* Brian T. Fitzpatrick, *An Empirical Study of Class Action Settlements and Their Fee Awards*, 7 J. Empirical L. Stud. 811, 814 (2010) ("Most federal judges chose to award fees by using the highly discretionary percentage-of-the-settlement method.").

Moreover, a percentage-of-the-fund, contingent approach is what the class would have negotiated with class counsel at the outset in a hypothetical *ex ante* bargain; in fact, it has been used to determine a reasonable fee award in many wage and hour class action settlements. (*See page* 4 *supra*). For all of the above reasons, this Court can confidently apply the percentage-of-the-recovery method here.

### 2.    The Requested Fee Award is Appropriate

To determine what percentage of the fund should be awarded, the district court looks to the market price for legal services, which has traditionally ranged from 33% to 40% in comparable litigation. *See Gaskill v. Gordon*, 160 F.3d 361, 362 (7th Cir. 1998) (upholding award of 38% of common fund, and stating that "The typical contingent fee is between 33 and 40 percent…."); *see also Smith v. Alamo Claim Service*, No. 1:13-cv-01481-JES-JEH (C.D. Ill. Nov. 16, 2016)("The fees, in the amount of one-third of the settlement fund, are in-line with the contingency that is typically charged in FLSA cases."); *Meyenberg v. Exxon Mobil Corp.*, 2006 U.S. Dist. LEXIS 52962 at *5 (S.D. Ill., July 31, 2006) (Wilkerson, J.) ("The Court is independently aware that 33 1/3% to 40% (plus the cost of litigation) is the standard contingent fee percentage in this legal marketplace for comparable commercial litigation."); *Quintanilla*, No. 1:24-cv-00294 (N.D. Ill. July 2, 2025, ECF No. 48)(approving 35% fee of $10,000,000 wage and hour settlement of rounding and meal break claims); *Smith v. Advocate*, No. 19-cv-5148 (N.D. Ill. Aug. 5, 2022)(awarding 35% fee of $9,250,000 settlement of rounding wage claims).

Here, Class Counsel's request is based on the market in the Central District of Illinois and this Circuit where class and collective action lawyers routinely contract to receive one-third to forty percent of any settlement in all types of common fund matters as compensation for the risk of funding a potential multi-year litigation without any assurance of recovery. *See e.g., Smith v. Alamo Claim Service*, No. 1:13-cv-01481-JES-JEH (C.D. Ill. Nov. 16, 2016)("The fees, in the amount of one-third of the settlement fund, are in-line with the contingency that is typically charged in FLSA cases."); see also *Taubenfeld*, 415 F.3d at 599-600 (noting class actions in the Northern District of Illinois have awarded fees of 30-39% of the settlement fund); *Gaskill v. Gordon*, 160 F.3d 361, 362-63 (7th Cir. 1998) (affirming award of 38% of fund). Notably, Class Counsel have been awarded attorneys' fees and costs in the amount of forty percent (40%) of the common fund obtained for the settlement class in wage and hour cases. *See Williams-Green*, No. 09-cv-5707, Doc. No. 138 (N.D. Ill., Dec. 21, 2012); *Chambers*, No. 11 cv 6014, Doc. No. 73 (N.D. Ill., Aug. 14, 2013); *Nimely*, No. 12-cv-10431, Doc. No. 85 (N.D.Ill. Mar. 25, 2014) ; *Williams*, No. 13 CH 24303 (Circuit Court of Cook County, Nov. 24, 2014); *see also Dobbs v. DePuy Orthopaedics, Inc.*, 885 F.3d 455, 459 (7th Cir. 2018) ("The typical contingent fee is between 33 and 40 percent") *citing Gaskill v. Gordan*, 160 F.3d at 361, 362 (7th Cir. 1998); *Retsky Family Ltd. P'ship v. Price Waterhouse LLP*, No. 97 C 7694, 2001 WL 1568856, at *4 (N.D. Ill. Dec. 10, 2001) (customary contingency fee ranges from 33 1/3% to 40% of the amount recovered); *Prena*, No. 15 C 09175, 2015 WL 2344949, at *1 (N.D. Ill. May 15, 2015) (contingency of 33-40% is typically charged in FLSA cases); *In re Diary Famers of Am., Inc.*, 80 F. Supp. 3d 838, 845 (N.D. Ill. 2015) (the usual range of contingent fees is between 33 and 50 percent); *McDaniel*, 2011 WL 13257336, at *4 ("[T]he real-word market range for contingent fee cases is 33% to 40%."); 5 William Rubenstein, NEWBERG ON CLASS ACTIONS § 15.83 (5th ed.) (noting that,

8

generally, "50% of the fund is the upper limit on a reasonable fee award from any common fund"). Thus, the requested one-third is appropriate and supported by case law. Additionally, because the Parties negotiated an attorneys' fees arrangement at the start of the litigation, the presumption of market-rate reasonableness applies. *See Briggs v. PNC Financial Services Group, Inc.*, No. 1:15-cv-10447, 2016 WL 7018566, at *4 (N.D. Ill. Nov. 29, 2016).

### 3. Class Counsel Achieved an Excellent Result for the Class

Each of the 13,328 settlement participants will receive approximately $2.12 for each week they worked during the period of May 25, 2013 to January 25, 2025. Thus, if an individual worked for 100 weeks, they will receive $212.00. If they worked 250 weeks, they will receive $530.00. The average net payment per person for the 13,328 claimants is $511.14.

Besides securing significant payments for settlement participants, there are two more reasons why Class Counsel achieved an especially outstanding result. First, Class Counsel successfully brought a claim under the IWPCA which more than tripled the recovery period and allowed Class Members to be paid for time detrimentally rounded in weeks they did not work at least 40 hours. Second, Defendant ceased its rounding policy after the filing of the Complaint. Instead of rounding punch times, Defendant now pays for all time worked.

When weighed against the strength of Plaintiff's claims and the merits of Defendant's legal and factual defenses, the consideration paid by Defendant is reasonable and the plan of allocation is equitable and fair. The Settlement provides a gross fund of $16,000,000 to be paid to the Settlement Class Members who submitted Claim Forms, plus Defendant's payroll obligations which will not be deducted from the gross fund and will be paid separately. Moreover, if a Settlement Class Member did not submit a Claim Form, that person does not release any claims under the FLSA. (Settlement Agreement, §§ 4.1, 4.2). Accordingly, the Settlement is an excellent

result for the Settlement Class Members and does not place burdens on Settlement Class Members to receive payment from the Settlement.

### 4.     The Risk of Non-Payment Supports the Requested Fees

At the outset of the litigation, Settlement Class Counsel took "on a significant degree of risk of nonpayment" in agreeing to represent the named Plaintiff on a contingent fee basis and assumed the risk that they would receive *no* fee for their services.  *Taubenfeld,* 415 F.3d at 600 (approving of district court's reliance on this factor in evaluating attorneys' fees); *Sutton*, 504 F.3d at 693-94 (7th Cir. 2007) ("We recognized [in an earlier case] that there is generally some degree of risk that attorneys will receive no fee (or at least not the fee that reflects their efforts) when representing a class because their fee is linked to the success of the suit.").  As the Seventh Circuit has noted, Class Counsel "could have lost everything" they invested. *Matter of Cont'l Ill. Sec. Litig.*, 962 F.2d 566, 570 (7th Cir. 1992) (Posner, J.).  In common fund cases, courts determine reasonableness by "awarding counsel the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time."  *In re Synthroid Mktg. Litig.*, 264 F.3d 712, 718 (7th Cir. 2001)(*Synthroid* 1).

### C.     The Payment of Class Counsel's Litigation Costs are Appropriate

The Settlement provides that Settlement Class Counsel may apply to the Court for payment of litigation costs not to exceed $55,000.00.  Plaintiff's approximate costs are $40,895.00 which includes filing fees, the service of process fee, mediator's fees ($11,000.00) for the full day mediation, travel to and from California for the mediation, deposition transcripts and expert costs ($15,318.75) in analyzing payroll records for over 30,000 individuals, and copying costs.  (Ex. 1, Ryan Decl., ¶ 24; Ex. 2, Bormes Decl., ¶ 24).  Class Counsel's request for these costs from the settlement fund is appropriate, as these costs were necessarily incurred in order to litigate and settle

this case. Courts approving a class action settlement may "award reasonable…nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). "It is well established that counsel who create a common fund…are entitled to the reimbursement of litigation costs and expenses, which includes such things as…computerized research; court reporters; travel expense; copy, phone and facsimile expenses and mediation." *Abbott v. Lockheed Martin Corp.*, 2015 WL 4398475, at *4 (S.D. Ill. July 17, 2015).

**D.     The Court Should Approve the Settlement Administrator's Costs**

Analytics Consulting, LLC has administered the Class Notice process to approximately 29,539 individuals and will administer the remainder of the Settlement and issue the settlement checks to 13,328 individuals. Plaintiffs request that the Court award the Settlement Administrator its estimated expenses of $126,299.00. The Claims Administrator performed all duties requested of it with diligence, including issuing notice to approximately 29,539 individuals and the forthcoming settlement payments. The Claims Administrator ran the addresses of all Settlement Members' last known addresses through the National Change of Address database prior to mailing the notice of settlement to them.  If a Notice Packet was returned as undeliverable, the Claims Administrator performed an entry level skip trace for any updated address information and re-mailed the notice packet to any updated address found.  The Claims Administrator provided the parties with progress reports and will establish a Qualified Settlement Fund and be responsible for issuing the settlement checks and any related tax documents if the Court grants final approval. The Claims Administrator has performed all duties expected of it, and its reasonable costs should be approved.

**E.     The Court Should Approve the Requested Service Awards**

The Settlement Agreement also contemplates a Service Award of $15,000.00 to the Named Plaintiff, and $2,500 for each of the eight (8) Opt-in Plaintiffs to acknowledge their service to the Settlement Class Members. *In re Synthoid Marketing Litigation*, 264 F.3d 712, 722-23 (7th Cir. 2001); *Cook v. Niedert,* 142 F.3d 1004, 1016 (7th Cir. 1998)("Because a named plaintiff is an essential ingredient of any class action, an incentive award is appropriate if it is necessary to induce an individual to participate in the suit."). In examining the reasonableness of a requested service award, courts consider: (1) the actions the plaintiffs have taken to protect the interests of the class, (2) the degree to which the class has benefited from those actions, and (3) the amount of time and effort the plaintiffs expended in pursuing the litigation. *Cook*, 142 F.3d at 1016.

An analysis of those factors warrants the requested service awards. First, the Named Plaintiff and the Opt-In Plaintiffs took substantial actions to protect the interests of over 30,000 Settlement Class Members. They provided valuable information to Class Counsel prior to and on an on going basis during the litigation, dedicated their time and effort to prosecuting the claims in this case, and engaged in detailed communication with counsel. (Ex. 1, Ryan Decl., ¶¶ 18, 19; Ex. 2, Bormes Decl., ¶ 20). They conferred with Class Counsel during discovery and in response to various factual and legal arguments Defendant raised in discovery and during the mediation process. (Ex. 1, Ryan Decl., ¶¶ 18, 19; Ex. 2, Bormes Decl., ¶ 20). They participated in every way that was asked of them. In doing so, the Named Plaintiff and Opt-In Plaintiffs assumed significant risk that "should the suit fail, [they could] find [themselves] liable for the defendant's costs". *Espenscheid v. DirectSat USA, LLC*, 688 F.3d 872, 876-77 (7th Cir. 2012) (internal citations omitted). "The incentive reward is designed to compensate [named plaintiffs] for bearing these risks." *Id.* Without the efforts of the Named Plaintiff and the Opt-In Plaintiffs, this settlement would not have been achieved. The Named Plaintiff also merits recognition for risking retaliation

12

from future employers for the benefit of all settlement members. *See, e.g., Beesley v. Int'l Paper Co.*, No. 06 cv 703, 2014 WL 375432, at *4 (S.D. Ill. Jan. 31, 2014) (recognizing that suits against former employers also carry risks of professional and personal repercussions); *Singleton v. Domino's Pizza, LLC*, 976 F. Supp. 2d 665, 691 (D. Md. 2013) (noting that named plaintiffs risk future employers finding out, through a simple Google search, that they filed a class action lawsuit against their prior employer).

Courts in this Circuit and others have awarded similar service payments to named plaintiffs who recover settlement funds on behalf of similarly situated employees in collective actions. *Piekarski v. Amedisys Illinois*, LLC, No. 12-cv-7346 (N.D. Ill. Aug. 4, 2016)(approving $15,000 service award to named Plaintiff in FLSA collective action); *Binissia v. ABM Indus*., No. 1:13-01230 (N.D. Ill. Jan. 19, 2018)(approving $13,000 service award to the named Plaintiff in wage and hour class and collective action settlement); *Briggs v. PNC Financial Services Group, Inc.*, 2016 WL 7018566, at *2 (N.D. Ill. May 1, 2017)(approving $12,500 service award to named plaintiff in overtime collective action); *Reyes v. Altamerea Grp.,* LLC, No. 10-cv-6451, 2011 WL 4599822, at *9 (S.D.N.Y. Aug. 16, 2011)(approving service awards of $15,000 each for the three class representatives in wage action). Accordingly, a Service Award of $15,000.00 to the Named Plaintiffs and $2,500 for each Opt-in Plaintiff is reasonable and appropriate.

## IV.   Conclusion

Based upon the market rate, the fee agreement in this case, fee awards in similar cases, the risk of non-payment, and the result achieved, the Court should award Class Counsel attorney fees of $5,333,333.33, litigation costs not to exceed $55,000, Service Award of $15,000 for the Plaintiff and $2,500 for each of the eight (8) Opt-in Plaintiffs, and the Settlement Administrator's costs of

$126,299.00, and grant such further relief as the Court deems appropriate.

Dated:  September 5, 2025                    Respectfully submitted,

                                            /s/ Thomas M. Ryan
                                            One of Plaintiffs' attorneys


James X. Bormes                      Thomas M. Ryan
Catherine P. Sons                    Law Office of Thomas M. Ryan, P.C.
Law Office of James X. Bormes, P.C.  35 East Wacker Drive
8 South Michigan Avenue              Suite 650
Suite 2600                           Chicago, Illinois 60601
Chicago, Illinois 60603              312-726-3400
312-201-0575


## CERTIFICATE OF SERVICE

The undersigned, an attorney, hereby certifies that he caused a copy of the foregoing Plaintiffs' Motion and Memorandum for Attorney Fees, Litigation Costs, Settlement Administration Costs and Service Awards to be filed and served on September 5, 2025 upon the following individuals via the Court's CM/ECF electronic filing system:

Amy Doehring
Catherine A. Miller
Akerman LLP
71 S. Wacker Drive, 47th Floor
Chicago, IL 60606
amy.doehring@akerman.com
catherine.miller@akerman.com


                                            /s/ Thomas M. Ryan

14